...

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
Dominique Pobedonostzeff

        Plaintiff,

  v.

Pfizer Inc., the Pfizer Consolidated Pension Plan,
and the Retirement Committee of the Pfizer
Consolidated Pension Plan,

        Defendants.
------------------------------------------------------x

Case No. 13 CV 7061 (PAE)
Amended
VERIFIED COMPLAINT

[RECEIVED OCT -7 2013 U.S.D.C. S.D.N.Y. CASHIERS stamp]

Plaintiff Dominique Pobedonostzeff ("Dominique") alleges as follows against Defendant Pfizer Inc. ("Pfizer"), the Pfizer Consolidated Pension Plan (the "Plan") and the Retirement Committee of the Plan (the "Retirement Committee") (collectively, the "Pfizer parties"):

1.     This is an action for statutory and equitable relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") relating to the Retirement Committee's denial of a survivor benefit to Dominique under the Plan after the death of her spouse, Alexis Pobedonostzeff ("Alexis").

2.     Terminally ill at the time he made his benefit election under the Plan, Alexis had mistakenly chosen a "Single Life Annuity," which provided for fixed monthly payments to him for his life only, with no survivor benefit upon his death to his spouse, Dominique. This choice made no sense for a man in his his rapidly declining condition, given his substantial healthcare costs, the potential for catastrophic expenses and need to ensure that Dominique had a source of income after his death, but his confusion is understandable when one takes into account that his illness caused him to suffer from debilitating pain, which was only slightly relieved by his heavy regimen of pain medications.

3.     As part of the election process for a participant who elects a form of benefit

other than the "normal" benefit, the Plan supplied a spousal consent form as required by law. However, the particular spousal consent form that Dominique was provided failed to satisfy the requirements of applicable law, because it did not state with sufficient specificity the optional benefit form that Alexis had in fact elected. As a direct result, Dominique signed the form not realizing that Alexis had selected the Single Life Annuity, a payment option which did not provide for any survivor benefit, and which was not the form that she and Alexis had decided on.

4. After Alexis' death on March 26, 2012, less than two months after his annuity starting date, Dominique learned from Pfizer that she would receive no survivor benefit under the Plan. In essence, a pension representing 33 years of work with a lump sum present value in excess of $1.3 million had evaporated.

5. In accordance with the Plan's claims procedures, Dominique timely requested a review of this decision by Pfizer and the Retirement Committee, identifying the inconsistencies between the applicable Internal Revenue Service guidance and Treasury Department regulations on the matter of spousal consent and the spousal consent form which had been provided to her. The Pfizer parties arbitrarily and capriciously denied Dominique's claim and subsequent appeal showing through their summary response, that they had given no real consideration to the technical legal issue raised.

6. Dominique seeks a *de novo* review of the Pfizer parties' denial by the Court. Because the spousal consent form did not comply with applicable law, Alexis' election of the Single Life Annuity form should be voided as a matter of law and the normal form of benefit for a married participant, the joint and 50% survivor annuity form (the "50% J&S Annuity"), providing a 50% survivor annuity to Dominique should be provided.

## PARTIES

7.     Dominique Pobedonostzeff is a citizen of France and a legal resident of the United States, a domiciliary of the State of New York, and a resident of Westchester County.

8.     Pfizer is a corporation registered under the laws of the State of New York, with its principal place of business at 235 East 42nd Street, New York, New York 10017.

9.     The Plan is an employee pension benefit plan as defined at ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A)(i). The Plan's administrative offices are located in Peapack, New Jersey.

10.    Under the Plan, Pfizer's Board of Directors appoints a "Retirement Committee," which is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 USC § 1002(16)(A), and the Plan's "named fiduciary" within the meaning of ERISA § 3(21)(A), 29 USC § 1102(a)(2). The Plan's administrative offices for the Retirement Committee are in Peapack, New Jersey.

11.    Pfizer, through the appointment of the Retirement Committee, exercised and continues to exercise discretionary authority for the management of the Plan. Therefore Pfizer itself is a "fiduciary" of the Plan within the meaning of ERISA § 3(21)(A), 29 USC § 1002(21)(A).

12.    The Retirement Committee's discretionary decision-making authority includes construing and applying Plan terms, reviewing denials of benefits and hearing administrative appeals of Plan participants and beneficiaries. Accordingly, at all times relevant herein, Pzifer and the Retirement Committee had a conflict of interest in its review of benefits denials and administrative appeals.

## JURISDICTION AND VENUE

13.    This action is brought pursuant to the ERISA §§ 502(a)(1)(B) and 502(a)(3), 29

U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).

14.     The jurisdiction of this Court is invoked under ERISA § 502(e), 29 U.S.C. § 1132(e).

15.     Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because some or all of the actionable conduct for which relief is sought occurred in this District and one or more of the Defendants may be found in this District.

## FACTUAL ALLEGATIONS

### ALEXIS' CAREER WITH PFIZER AND SUBSEQUENT ILLNESS

16.     Alexis was employed by Pfizer for more than 30 years. He retired on February 16, 2009. During the term of his employment, Alexis accrued at least 30 years of credited service under the Plan.

17.     Alexis was born in France to first-generation Russian immigrants and married Dominique, a French citizen. After more than 12 years of service to Pfizer in France, the couple moved to London where Alexis continued working for Pfizer. Alexis was then 42; Dominique 40. After 8 ½ years in London, Alexis then transferred to New York City where he finished his Pfizer career. English was a third language for Alexis, after Russian and French, and a second language for his wife. Alexis and Dominique conversed in French, and Alexis frequently conducted business for Pfizer in a non-English language.

18.     In July of 2009, shortly after his retirement, Alexis underwent triple bypass heart surgery followed in November of 2009 by kidney surgery. Following the kidney surgery, Alexis began suffering from severe pain. In October 2010, Alexis was diagnosed with advanced (stage IV) renal cell cancer. For 16 months, he underwent chemotherapy treatments, which were ultimately unsuccessful.

19. By late 2011, Alexis was in constant pain and taking a heavy regimen of pain medications. The side-effect of the pain medications caused disorientation and impacted his attention span. Consistent with his inherent personal nature, Alexis kept the particulars of his illness private and seldom complained of his pain, condition or prognoses save to Dominique and his doctors.

## THE MISTAKEN ELECTION

20. On November 16, 2011, Alexis was contacted by the Plan's third party administrative vendor ("hrSource'), an affiliate of Fidelity Investments. By letter, Alexis was informed that because he would be turning 65 on January 19, 2012, he needed to begin the process of completing the necessary forms to commence distribution of his benefits under the Plan.

21. On a December 1, 2011 phone call, Alexis provided hrSource with personal demographic information. He asked questions about available distribution options and, in particular, about the "possibility of a lump sum," and under what conditions he needed his wife's "sign off." The hrSource representative responded that he needed his wife's consent for the Lump Sum option. In response to further questions, the representative described the Lump Sum option in more detail and explained – incorrectly – "that would be the only time your wife would have to sign off and have her signature notarized." Alexis thanked the representative, and told her, "I already have a copy of the rules and regulations but it is very confusing."

22. Thereafter, hrSource prepared and mailed an eight page document entitled "Your Pension Benefit Modeling Statement" (the "Modeling Statement").

23. The Modeling Statement, sent under cover letter dated December 27, 2011, provided an estimate of the amount that Alexis would receive under the normal and various

5

optional forms of payment available to him under the Plan. The Modeling Statement (p.6) also stated the amount that Dominique would receive under the various survivor options, assuming a benefit form with a survivor option was selected. Only two options had no survivor benefit: the "Lump Sum" and "Single Life Annuity." According to the Modeling Statement, the "Lump Sum" would supply a single payment of $1,350,112.81 and the "Single Life Annuity" would supply a monthly payment of $8,946.62.

24. For the "Lump Sum," the Modeling Statement (p.5) offered the following further explanation: "The lump sum payment option is a one-time payment to you with no additional payment to a beneficiary after your death."

25. The Single Life Annuity also does not provide for a survivor benefit, but that fact is not explicitly disclosed on that page or elsewhere in the Modeling Statement.

26. Before making his election, Alexis spoke several times with Dominique and a close friend, a former Pfizer colleague, who was one of the few who understood the seriousness of Alexis' medical condition. They had long discussions in which they spoke of the pros and cons of a lump sum payment versus an annuity.

27. The uncertainty over Alexis' health was to be the major contributing factor to his election as he wanted to insure that Dominique would be taken care of financially after his death.

28. Because of the severity of Alexis' illness and the poor prognosis, Dominique and Alexis never discussed the "Single Life Annuity", which the Modeling Statement states is "the normal payment option for non-married participants," as an option.

29. The Modeling Statement advised Alexis to call hrSource to make his election, and on January 19, 2012, Alexis spoke with an hrSource representative and advised that he was

6

electing to receive his benefit in the form of the 50% J&S Annuity, what he called the "normal thing for married participants."

30.     On January 20, 2012, Alexis called hrSource to ask if he could change his election.

31.     For numerous reasons, including (i) his severely debilitated physical and mental states; (ii) his heavy regimen of pain medications, which were not effective in curtailing the pain, (iii) his general pre-occupation with his health and the impact it was having on his life and those closest to him, (iv) the complex financial decision with which he was faced, with highly technical descriptions of it written in his third language, and (v) the relative similarity between the phrases "Single Lump Sum" and "Single Life Annuity", Alexis became confused and erroneously and mistakenly asked the hrSource representative to change the form of payment to a "Single Life Annuity."

32.     On that day, as had been the case since in and around November 2010, Alexis was under the influence of a considerable amount of prescription pain medication, Oxycodone, and suffered a number of side effects from the medication. On this and all other phone calls, Alexis was not asked about his medical condition or whether he was under the influence of any medications.

33.     Under a cover letter dated January 20, 2012, Alexis received a seven page package of distribution documents reflecting his conversations with hrSource. Page 5 reflected in a single line the fact that the "Single Life Annuity" had been elected. However, directly below that line and displayed much more prominently was a designation of Dominique as his beneficiary and that her "Percentage of Benefit" was 100%. To Alexis, this made it appear that Dominique would get 100% of the elected benefit.

7

34. Page 6 of the distribution package contained a section entitled Spousal Consent for *Pfizer Consolidated Pension Plan*. The consent only stated that the spouse was consenting "to the form of payment elected by my spouse", but did not specify what that form of payment was. The consent referred the spouse to the Modeling Statement (which had been sent to Alexis almost a month before), but not to page 5 in the distribution documents where Dominique could have seen Alexis' erroneous election of the Single Life Annuity.

35. Page 7 of the distribution package contained bullet-points constituting 17 densely-packed participant certifications. Although the first bullet point indicates that the "Single Life Annuity" was selected, it is not a page that the spouse signs or, indeed, is directed (on page 6) to review.

36. On January 31, 2012, a notary public came to Alexis and Dominique's home. Dominique was handed a single sheet of paper, page 6 of the distribution package, which contained the Spousal Consent Form (the "Consent"). Dominique saw the line that named her as 100% beneficiary and understood only that it was required in order for Alexis's election of benefits, which she assumed was the Lump Sum Option, to be effective.

37. Dominique signed the Consent before the notary public.

### THE PLAN'S INADEQUATE SPOUSAL CONSENT FORM

38. Under § 401(a)(11) of the Internal Revenue Code of 1986, as amended (the "Code") and ERISA § 205(c), if a married participant survives until his annuity starting date, the benefit must, in general, be paid in the form of a qualified joint and survivor annuity ("QJSA").

39. Code § 417(b) defines QJSA as:

an annuity (1) for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50% of (and not greater than 100% of) the amount of the

annuity which is payable during the joint lives of the participant and the spouse, and (2) which is the actuarial equivalent of a single life annuity for the life of the participant.

40. Code § 417(a)(1) provides that a plan that is required to provide an automatic survivor benefit (such as a QJSA) must also provide the participant with an opportunity to waive the QJSA during the applicable election period (i.e., under Code § 417(a)(6), the 180-day period ending on the annuity starting date).

41. Code § 417(a)(2)(A) and ERISA § 205(c)(2) provide that a participant's election to waive the QJSA shall not take effect unless:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent . . ., and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

42. Treasury Regulation § 1.401(a)-20, Q&A-31 sets forth detailed rules governing a participant's waiver of a QJSA. Subsection (b) therein sets forth, among others, the following rule governing situations where a QJSA is waived in favor of an optional form of benefit:

> Both the participant's waiver of a QJSA (and any required spouse's consent thereto) must specify the particular optional form of benefit." [emphasis added]

43. In IRS Notice 97-10, 1997-1 C.B. 370, the Internal Revenue Service provided sample language "designed to to assist plan administrators in preparing spousal consent forms that meet the statutory requirements." [emphasis added] Appendix A to the Notice contains model language that can be included in a spouse's waiver of a QJSA and in order to satisfy the applicable requirements of law. The Notice contains model language for both (i) a specific consent (i.e., where the spouse agrees to the participant's choice of a particular form of benefit) and (ii) a general consent (i.e., where the spouse agrees to allow the participant to choose any form of benefit without telling the spouse the selection). Option A under Appendix A sets forth the model language for a specific consent. This model language provides, in relevant part, as

9

follows:

> I, (*name of participant's spouse*), am the spouse of (*name of participant*). I understand that I have the right to have (*name of plan*) pay my spouse's retirement benefits in the special QJSA payment form and I agree to give up that right. I understand that by signing this agreement, I may receive less money than I would have received under the special QJSA payment form and I may receive nothing after my spouse dies, depending on the payment form that my spouse chooses. <u>I agree that my spouse can receive retirement benefits in the form of a (*insert form of benefit selected*)</u>. . . . [emphasis added]

44. In explaining the reason why the Internal Revenue Service drafted the model language as it did, Notice 97-10 provides as follows:

> "In order for a spouse's consent to be valid, the spousal consent form is not required to contain the specific language contained in the Appendices. In all cases, however, spousal consent forms should be written clearly to ensure that the spouse both understands and acknowledges the effect of the participant's waiver of rights."

45. The spousal consent form that was provided as part of the distribution forms prepared by hrSource and that Dominique signed failed to satisfy the requirements of Code § 417(a)(2) and ERISA § 205(c)(2). As noted above, this form, entitled ***Spousal Consent for Pfizer Consolidated Pension Plan***, was crowded onto page 6 of the package, immediately below the information reflecting Alexis' Direct Deposit election.

46. The Consent, after providing four bulleted instructions for its completion, states only the following:

> I am the spouse of ALEXIS POBEDONOSTZEFF. I have reviewed the description of the Qualified Joint & Survivor Annuity payment options with "Spouse" as the beneficiary in the **Your Pension Benefit Modeling Statement**. I acknowledge that as the spouse, I have a right to receive the survivor benefit of a Qualified Joint & Survivor payment option listed as the Normal Payment Option under the Plan in lieu of any other payment option available. By signing this form, I acknowledge that I have read the **Pension Benefit Modeling Statement** prepared for my spouse and consent to the form of payment elected by my spouse in lieu of the normal form of payment. I understand that this will result in the elimination or reduction of my right to receive a survivor benefit. I consent to my spouse's waiver of the 30-day waiting period if applicable.

47. The Consent fails to satisfy the requirements of Code § 417(a)(2) and ERISA §

205(c)(2) because it does not reflect the actual form of benefit that Alexis had elected. As Treasury Regulation § 1.401(a)-20, Q&A-31 makes clear and is shown in the model language supplied in IRS Notice 97-10, a spousal consent <u>is required</u> to contain this information. Without it, Dominique did not know that Alexis had erroneously selected the "Single Life Annuity" form. Had it been stated plainly in the Consent that Alexis had elected the "Single Life Annuity" and not the Lump Sum Option, with monthly payments made to Alexis that would end at his death, Dominique could have brought the error to Alexis' attention. As such, the Consent did not meet the requirements of law, thus negating Alexis' election of the Single Life Annuity.

## THE ADMINISTRATIVE APPEAL

48. During February 2012, Alexis' health declined rapidly. Dominique's entire attention was devoted to his care.

49. After Alexis' annuity starting date, monthly annuity payments for February and March, 2012 were deposited directly into his and Dominique's joint bank account.

50. Alexis passed away on March 26, 2012. Pfizer was notified of Alexis' death shortly thereafter.

51. Sometime after April 4, 2012, when she learned that the April monthly payment which had been deposited directly into her account had been reversed, Dominique learned that Alexis had selected the Single Life Annuity and was told that she would not receive any survivor benefits.

52. On October 4, 2012, Dominique, through counsel, sought review of the Pfizer parties' determination to deny her claim for survivor benefits. In a detailed four page legal analysis addressed to the Retirement Committee, Dominique raised the issue of the deficiencies

in the spousal consent waiver, asked that Alexis' erroneous election made on January 20, 2012 be voided, and that election default to the normal form – the 50% J&S Annuity.

53. On or about January 3, 2013, the Retirement Committee issued a decision denying Dominique's request. The letter setting forth its denial contains no analysis whatsoever with respect to whether Dominique had provided an informed consent. Instead, the entire "legal analysis" with respect to that issue stated:

> We disagree with your legal conclusion that the consent form does not meet the requirements of ERISA and the Internal Revenue Code. The consent form makes it clear that Dominique was relinquishing her right to receive a survivor benefit."

54. On March 14, 2013, Dominique, through counsel, appealed the determination of the Retirement Committee. Again, the bulk of the legal analysis proffered on appeal addressed the issue of why the Consent executed by Dominique failed to satisfy the requirements of applicable law.

55. On or about July 12, 2013, the Retirement Committee issued a letter denying the appeal. In this denial, the Retirement Committee stated with respect to the Consent the following summary conclusion, without a shred of actual legal analysis or comment on the analysis provided by Dominique in her appeal:

> Legal counsel has reviewed the literature and accompanying form and has determined that it complies with ERISA and the Internal Revenue Code.

## FIRST CAUSE OF ACTION
### (Against the Plan for Denial of Benefits)

56. Plaintiff realleges and incorporates all paragraphs of the Complaint as if fully set forth herein.

57. As a matter of law, the Plan was required to furnish a spousal consent form to Dominique that was written clearly to ensure that the she both understood and acknowledged the effect of Alexis' waiver of her rights and which reflected the optional form of benefit

12

elected by Alexis.

58. As a matter of law, the spousal consent form provided to Dominique was inadequate.

59. The Plan's spousal consent form was impermissibly vague in describing the terms of the election and failed to provide critical and legally required information.

60. Due to the inadequate spousal consent form which did not inform her of the specific benefit form elected by her husband, Dominique did not give a valid consent to Alexis' election of the Single Life Annuity benefit form.

61. Therefore, the Court should restore Dominique's survivor benefits, in the form of the normal 50% J&S Annuity, award damages in the amount of the benefits not paid since the death of Alexis with interest thereon, and her costs and attorneys fees.

## SECOND CAUSE OF ACTION
### (Against Pfizer and the Retirement Committee for Breach of Duty)

62. Plaintiff realleges and incorporates all paragraphs of the Complaint as if fully set forth herein.

63. The Retirement Committee is the named Plan Administrator in the Plan's summary plan description and thus has fiduciary obligations under ERISA.

64. Upon information and belief, the Retirement Committee exercised and continues to exercise discretionary authority that includes, but is not limited to, the adoption of the form of the spousal consent form; the payment of benefits under the Plan, and the review of benefits determinations.

65. The Retirement Committee had a fiduciary duty to act "solely in the interest of the participants and beneficiaries" for the purpose of providing benefits and administering the plan. ERISA §404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

66. In violation of ERISA §404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), the Retirement Committee did not discharge its duty in the interest of the beneficiary, Dominique, but instead for reasons of Pfizer's private financial self-interest.

67. The Plan's spousal consent form was impermissibly vague in describing the terms of the election and failed to provide critical and legally required information when Pfizer and the Retirement Committee knew or should have known that this failure to do so might cause harm, thereby breaching its fiduciary duty under ERISA.

68. By reason of the fatally defective spousal consent form used by the Retirement Committee, Dominique did not provide a valid consent to Alexis' election of the Single Life Annuity.

69. Dominique timely sought review of the denial of benefits by Pfizer and the Retirement Committee.

70. The Retirement Committee acted in an arbitrary and capricious and self-interested manner by conducting a cursory, if any, review of the issues raised by Dominique with respect to the legal sufficiency of the Consent.

71. In the appeal of her claim denial, Dominique did not receive the full and fair review by Pfizer's Retirement Committee to which she is entitled under ERISA § 503(2), 29 USC § 1133(2).

72. Therefore, the Court should award Dominique appropriate equitable relief by restoring her survivor benefit in the form of the normal 50% J&S Annuity, award damages in the amount of the benefits not paid since the death of Alexis with interest thereon, and her costs and attorneys fees.

**WHEREFORE**, Dominique Pobedonostzeff requests that this Court enter judgment

against the Plan, Pfizer and Retirement Committee awarding:

(a) monetary damages under ERISA § 502(a)(1)(B), 29 USC § 1132(a)(1)(B), for the amount of benefit not received prior to the commencement of payments under the 50% J&S benefit;

(b) an Order directing the Plan to pay Dominique the normal form of benefit, the 50% J&S, under ERISA § 502(a)(3), 29 USC § 1132(a)(3);

(c) interest, costs attorneys fees under ERISA § 502(g), 29 USC § 1132(g); and

(d) such other appropriate equitable relief as the Court may deem just and equitable.

Dated:   New York, New York
October 1, 2013

          ELLENOFF GROSSMAN & SCHOLE LLP

          s/ *Adrienne M. Ward*
          Adrienne Ward (AW-4126)
          Holly Froum (4155)
          150 East 42nd Street
          New York, New York 10017
          (212) 370-1300 (tel.)
          award@egsllp.com
          hfroum@egsllp.com
          *Attorneys for Plaintiff Dominique Pobedonostzeff*

Of counsel:

Peter Cohen, Esq.
ELLENOFF GROSSMAN & SCHOLE LLP
150 East 42nd Street
New York, New York 10017
(212) 370-1300 (tel.)
pcohen@egsllp.com

15

## **VERIFICATION**

STATE OF NEW YORK           )
                            )   ss.:
COUNTY OF WESTCHESTER       )

I, Dominique Pobedonostzeff, being duly sworn, hereby deposes and says:

I am the Plaintiff in this action. I have read the foregoing Verified Complaint. The same is true to my own knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

_____
Dominique Pobedonostzeff

On the 23 day of September, 2013, before me the undersigned, personally appeared Dominique Pobedonostzeff, known to me or proved to me on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her personal capacity and as executor for the estate of Alexis Pobedonostzeff, that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the foregoing instrument.

_____
Notary Public
(Affix Notarial Stamp)

My Commission Expires:

12/13/13

JOSEPH ARCHINA
Notary Public, State of New York
No. 01AR6034577
Qualified in Westchester County
Exp. Date: 12/13/13

Index No.                              Year 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Dominique Pobedonostzeff

Plaintiff,

v.

Pfizer Inc., the Pfizer Consolidated Pension Plan,
and the Retirement Committee of the Pfizer
Consolidated Pension Plan,

Defendants.

*Amended*
**VERIFIED COMPLAINT**

ELLENOFF GROSSMAN & SCHOLE LLP

Attorneys for

Plaintiff
150 EAST 42ND STREET
NEW YORK, NEW YORK 10017
(212) 370-1300

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

Dated:...................................              Signature ..........................................................................................

Print Signer's Name..............................................................................

Service of a copy of the within                                                         is hereby admitted.
Dated:

Attorney(s) for

**PLEASE TAKE NOTICE**

☐ NOTICE OF ENTRY

that the within is a (certified) true copy of a
entered in the office of the clerk of the within-named Court on                    20

☐ NOTICE OF SETTLEMENT

that an Order of which the within is a true copy will be presented for settlement to the
Hon.                                , one of the judges of the within-named Court,
at
on                                20           , at                    M.

Dated:

ELLENOFF GROSSMAN & SCHOLE LLP

Attorneys for

150 EAST 42ND STREET
NEW YORK, NEW YORK 10017

To: